on behalf of the Apple office of Bruce Kirkham, on behalf of the people of the city of Illinois, Mr. Scott Dickerson. Mr. Kirkham. You may proceed. Thank you, Your Honor. May it please the court and the counsel. Good morning, Your Honors. My name is Bruce Kirkham and I appear today on behalf of the defendant and felon, Mr. Samadja Walker. Mr. Walker was denied a fair trial in this cause when the jury was not properly instructed on the proximate cause element of the felony murder charge of which he was convicted. I've always followed the proximate cause theory of felony murder since about 1935. And more recently, in People v. Hudson, our Supreme Court reaffirmed the proximate cause is an essential part of a felony murder jurisprudence. The court in Hudson broke proximate cause down into two components. Cause in fact, and legal cause. And the legal cause portion of that formulation is the question of foreseeability. So the question in Hudson was whether a non-IPI instruction that was given to the jury sufficiently informed jurors of the element of foreseeability. Counsel, there's one point in authority. Is that correct? I'm sorry, I didn't hear your question, Your Honor. There's one point in authority in your appellant's brief. One point of authority? One point in authority. Yes, there is. And it says that Mr. Walker was denied a fair trial because an IPI instruction on causation was not given. And then it seems that your argument is suggesting the trial court had a duty to submit the instruction? That's correct, Your Honor. What about ineffectiveness of counsel insofar as maybe counsel had a duty to submit an instruction? It's the responsibility of the trial court to ensure that the defendant receives a fair trial by instructing the jury, the finder of fact, on the elements of the offense, the burdens of proof, and the presumption of innocence. You know, in hindsight, we can say, sure, maybe counsel should have. But there is a responsibility on the part of the trial court to make sure that the elements of the offense. Well, is effective assistance of counsel supposed to point that out to the trial court? Did the defendant's attorney do that? And if the trial court refused, did the defense counsel then say, well, I would like to submit one? I know that part of the initial jury instructions conference was not recorded in the record, but the record does not contain any indication that defense counsel made that request. Well, normally with plain error, there is an error committed, which you claim in your point in authority. And one of the alternative second steps in the analysis is whether or not the integrity of the system is called into question or would the result have been any different. So do you raise plain error insofar as this is concerned? I don't recall. I do raise plain error, and I argue that this court should consider this issue as a matter of plain error. Okay. Now, insofar as plain error is concerned, would ineffectiveness of counsel in a constituent, constituent part of whether or not there was error committed in the first instance? I mean, I'm not exactly following your question. I mean, I didn't raise. Was the error that was apparent from the record one of the possible errors evident in the record that defense counsel did not comply with the necessary standard of care to see to it that an instruction on causation was submitted on behalf of the defendant? See, I don't think it was solely the responsibility of defense counsel. I didn't say it was solely. I said one of the bases. The point is that like baseball, both teams can commit errors. Correct. One team still wins, but both teams can commit errors. And one team can commit an error, and it won't necessarily lose the game. So in this instance, we could have error on the part of counsel, and we could have error on the part of the court. And one or both, or neither, could necessarily result in a difference. When you're playing error argument, did you raise ineffectiveness of counsel? No, I did not. My contention is that the trial court is ultimately responsible for ensuring that your jury is properly instructed on the elements of the offense, the state's proven proof, and the presumption of innocence. Didn't the court give an elements instruction? The court did. It gave 715, which is the causation in intentional and knowing homicide, which essentially amounts to a cause in fact. But the jury was never instructed on this question of foreseeability, which is necessary in felony murder cases, because the case was submitted to the jury under all three theories of first-degree murder liability, intentional murder, knowing murder, felony murder. So the court instructed on the first two, but did not instruct on the felony murder. The jury found not guilty on those first two, leaving only the felony murder conviction without being informed that it must find and consider the foreseeability element that is an essential part of felony murder.  In Hudson, there was a non-IPI given, which the court determined sufficiently informed the jury of the foreseeability element. So in that case, there was a foreseeability question according to the Supreme Court given to the jury. And in this case, there was none at all. So that's the essential difference. The jury in Hudson was instructed according to the Supreme Court of foreseeability. Here it was not. Maybe I'm wrong, but I thought the instruction in Hudson went to the cause in fact and left out the legal cause, left out the direct and foreseeable consequence. Maybe I'm correct. Correct me if I'm wrong. Well, I think the question to the Supreme Court had to answer, did the instruction as intended to the jury satisfy the approximate cause element, which the court defined as two parts, legal cause and cause in fact, and it determined that it did indeed meet those requirements of legal cause, which it had said includes the concept of foreseeability. So my reading of Hudson is that the Supreme Court did find that foreseeability was given to the jury through that instruction, that non-IPI. I think it's clear that they weren't real happy with that instruction and didn't want that to be the new instruction, so they proposed a different instruction, a more conventional foreseeability instruction that became codified as IPI 715A, which is causation in felony murder, which was not given in this case. So by only giving the legal cause instruction, the whole foreseeability question was not presented to the jury, and the defendant was convinced about a finding on that element. Do you have some case law that says that that is in fact an element of the offense? I know that this court has referred to it as an element. It's called People v. Cervantes. They reviewed the rule of Hudson and determined and actually called it an element of the foreseeability as an element. That was not a felony murder case, but it talked about foreseeability being found as an element of the offense in that case, and I think that's what you have to take away from Hudson when it says that foreseeability is an essential component of felony murder jurisprudence. It requires a finding by the finder of fact when causation is an issue, that it certainly must be considered to be an element. Can you address whether or not this error would be harmless in this case? Do you have any case law that shows where somebody who is beaten up or shot or whatever doesn't have medical treatment or there may be medical negligence involved where that's some intervening cause? Yeah, there's a lot of cases that talk about those kinds of issues. I'd like to answer your question in two parts. I know that in Hudson, Justice Freeman wrote a concurrence in which he disagreed with the majority that the instruction adequately instructed the jury on foreseeability, and he said that he would find the instruction to be inadequate, but it was harmless error, and he relied on people versus Palmi Kala and said that if it's clear by clear and convincing evidence that the outcome would not have been different beyond a reasonable doubt, then you could find harmless error, and that's what he would have found in that case. So there's a harmless error element involved there. On the question of intervening causes, if you read the treatises and the case law, intervening causes in the case of medical neglect or in treatment by a doctor, those cases have been found to not constitute intervening causes, and I caution the court not to get too tied up in those cases because I think they come before the court in a different procedural posture, where you have a guilty finding that's appealed, and a finder of fact has determined that there is probable cause on those, and the question for the court is a reasonable doubt standard, but you look at the evidence and the like most favorable to the state and determine whether any rational trier of fact could have found that element. Here we've got a case where the jury was in the finder of fact, was not told it needed to find proximate cause, was not asked to make that finding, and in fact did not. There's nothing in the jury's verdict that indicates it found the death of the victim was foreseeable. But in Sanchez, I mean the facts were, or I think that's, or Cervantes, pardon me, very different facts in that the defendant stabbed the victim, then didn't get additional assistance or he didn't want to go to the hospital or something. Either he didn't take him or the victim didn't want to go to the hospital, and aside from the fact that he also had, I guess, cocaine and heroin in his system, he died. Well, that's a little different. If you stab somebody and they're bleeding, it is reasonably foreseeable that you could die. Here, is there any evidence that they knew about his religion? So I don't know why, I mean, they kicked him in the head, they kicked him in the body, they threw him down the stairs, and the 715 says the acts of the defendant or someone under his direction contributing to, why isn't that enough? Because it doesn't include the direct and foreseeable consequence of those actions. I think that in a felony murder case... Well, what are they supposed to say? Excuse me, do your religious beliefs in any way prevent you from getting medical attention? Because I'm going to beat you up. I mean, how are they going to know that? How is it foreseeable? They didn't know. I mean, I know I might be arguing kind of in your favor here, but how, you take your victim as you find that victim, and if that victim dies because he refuses medical attention, how are you any less guilty? Well, I think there's a distinction to be made here. If you take your defendant as you find him, if he has preexisting conditions... And you're a victim. You're a victim, and he dies because of those, then that's inherent in finding the victim as you find him, or taking the victim as you find him. But here you have an affirmative refusal to accept treatment. That's different. You know, a conscious choice is different. Unless this individual came up with this religious belief after he was attacked, wouldn't you say that it was a preexisting condition to the extent that his religious beliefs were actually solidified and concretized and had your client asked, would have found out that had he beat this individual, this individual would not accept a blood transfusion? So to the extent that it is preexisting, is it not preexisting? I understand what you're saying, but I still think there's a distinction between someone who has like a physical condition that is impacted versus a later conscious choice to consciously, even if it is religious-based and that religious conviction was held prior to the beating, it still can be found by a finder of fact to be an intervening cause. And I think that that's the point that Justice Freeman was getting to. He says, you know, the notion of felony murder contains limits. You know, there has to be some kinds of limits as to the fact situations under which we will find felony murder. And that's a question of fact for the jury in this case, and the jury should have had the opportunity to make that decision whether or not. I believe it used to be that if someone survived for a year and a day from any injuries inflicted, it was deemed not to be murder or homicide. Is that correct? I have seen reference to that in the cases, but. And if that is no longer the law and supposedly causation can go beyond a year and a day, then it seems that the concept of causation has been broadened somewhat, would you not say? It definitely is broader than a year and a day. Correct. So where do we draw the line? We draw the line as to what the jury should have been instructed here, that the death was a direct and foreseeable consequence. The time does not matter. Well, what I'm getting at is not whether an instruction should have been given, but where do we draw the line for determining the prejudice of those? Well, I think you can. Such that is this harmless error? You know, if we can go beyond a year and a day and it becomes almost abstract, then how is this prejudicial for failing to render such an instruction or give one to the jury? I don't know that the length of time is as critical as the fact of intervening causes. I think that it's a jury question. We ask our jurors, our finders of fact, to make a determination whether this case is outside those limits, which the law must recognize in felony murder to avoid improper results. You know, what you have now is Mr. Walker convicted of first-degree murder, where the jury was never given an opportunity, where the jury did not have to find that element of foreseeability in this case, and that deprives them of a fair trial. But my question about that is, is that the basis? I mean, what is the direct and foreseeable consequence we're talking about? Is it the victim's death or is it the victim's refusal for treatment? You know, you're almost saying if there's no real basis for an acquittal on these facts, we're talking about a harmless error, you're actually saying he should have been given the instruction in order to present the opportunity for jury nullification. I mean, the Kate Gullifer talks about the victim's family and the victim in the medical profession owes no duty to a defendant to mitigate their criminal conduct. If you kick someone in the head and you throw them down the stairs, is it a direct and foreseeable consequence that they could die? With or without life-saving treatment? What's the consequence? But I don't think we can stop our inquiry at the initial act of violence. I don't think that it's fair to say, and I don't think the law says that the question in felony murder is, was it foreseeable that the initial crime could jump the tracks and lead to another offense, another act of violence? I think you have to take it all the way out. And that's shown by the cases that consider medical neglect during treatment. I mean, you don't say, well, he was beaten, and therefore we don't even get to the question of whether the doctor was neglectful or not. I think you have to go on and consider those facts and determine the jury in this case should have been able to make that determination. Okay, thank you. You will have an opportunity to make your point. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. I would like to begin with Peeble v. Gulliford because I believe that case sets forth all the principles that control this case. In Gulliford, the Third District declared that the legal chain of causation from the blow to the head, the circumstance is similar to this, and the ultimate death was unbroken under the facts presented to us. And the attending physician and the family of the victim owe no duty to the defendant to treat the victim so as to mitigate the defendant's criminal liability. And whether it's phrased as an instructional issue, or I know now we're talking about it as an effective assistance of counsel, the fact of the matter is that there could never be any prejudice in this case because there is nothing to attenuate the defendant's act of violently beating the victim in his home from his death in the hospital nine days later. So then what's the purpose of 7.15a? It's solely to instruct the jury as far as foreseeability. I mean, to me, that's inherent in the concept of causation. Foreseeability is supposed to be a limitation on legal cause. But in states such as Illinois, which adopt the proximate cause theory, there is a significant amount, maybe even it's redundancy, but a significant amount of overlap between foreseeability and proximate cause. I think the only circumstances in which a death would be reasonably unforeseeable are literally acts of God, I mean, or circumstances that are so clear-cut where clearly the death surrounding the felony or the commission of the felony has literally nothing to do with the person that was charged for the murder. Those aren't, I mean, the short answer is I don't quite know exactly where the line is. I know that this case is far from that. The defendant had tied up the victim with rough sisal rope. And in attempting to get free, the victim broke the skin around his wrists, which were subsequently infected, and the infection wasn't treated because of religious or other beliefs. Would it be fair to say that based upon what you just said, which was there is no exception, that in this instance or that factual scenario, the defendant would be found guilty of murder for tying someone up? I think I have a few difficulties with the hypothetical, just maybe because of the way it's been set up. Okay, he tied his hand and his feet. No, that's not my point. My point there is that might be a situation where I think it's at least more arguable in your hypothetical that the death was unforeseeable. I don't think that that's the point. The point is that I think you became hyperbolic when you went beyond. I will accept your argument as being reasonable when you say when somebody pushes somebody over the stairway and kicks them in the head, that rational people or a rational prior effect find that that could probably or reasonably result in death. But there are factual scenarios where doing something to a victim will not rationally result in death, but because of complications brought on by treatment, lack thereof, or whatever, the person dies. That's the whole theory behind a year and a day. Sure. Well, I mean, and there's a reason why, though, we no longer accept a year and a day. I mean, the nature of forcible felonies and their commission in society, the fact that deaths strongly surround them, I mean, simply put, all of these public policy reasons are reasons why we no longer have the year and a day rule. I think a great case on top of that point is People v. Ambigon from the Illinois Supreme Court, where they said that a bullet that struck the victim in the back and caused paralysis was the legal cause and the cause in fact of the victim's death five years later from pneumonia, and that his death from complications due to the gunshot wound was reasonably foreseeable. Five years later didn't attenuate. The amount of time didn't attenuate it. The circumstances, the fact that pneumonia was brought on by a weakened immune system, I mean, all those things are facts in the balance, but none of them serve to vitiate the defendant's criminal liability for his actions in perpetration or for his actions during the perpetration of the initial felony. I mean, in essence, whether it's time, whether it's facts related to the victim, as Justice Hutchinson noted, you take the victim as you find him. And I don't want to paint with too broad a brush, but the fact of the matter is this is the core essence of felony murder. It's that somebody dies under circumstances where a forcible felony has been perpetrated. Do you see that when you get shot in the back there's a reasonable probability that you might die in addition to or alternatively from becoming paralyzed? I'm sorry, can you? The example that you cited about being shot in the back, a person could have reasonably died, let alone survived for five years and then died from pneumonia. Sure. I think, and Gulliford is a similar case, too. I mean, where it's a couple days later and the person develops pneumonia and dies in the hospital, actually the hospital that he worked at. I think Gulliford, Amidon with the gunshot wound, this case of pretty vicious beating in the victim's home, I think those are all very far inside the safe realm foreseeability. What's your response to the issue regarding ineffectiveness of counsel? My response is that it's not an issue. I mean, we're talking about it conversationally. If that was the strategy the defendant wished to pursue, he could have argued it. If he's trying to set up his post-conviction argument, that's fine. It's not my place to tell the defendant how to litigate his case. But I would say that had the defendant raised that argument, it wouldn't matter because he could never show prejudice in this case, at least as far as felony murder is concerned. I think there are a lot of interesting issues that come up here, but the bottom line is that the defendant's argument is that we treat the victim's religious beliefs as a preexisting condition and that for some reason that makes this not a murder or something less than a murder. And respectfully, I disagree not only on strong public policy grounds, but that's just not the concept of foreseeability. The question is whether the defendant's acts caused the victim's death, not whether there were things that could have been done differently in between the striking of the blows and the victim's ultimate death in the hospital. But that then goes back to why do we have 7.15a. Apparently the Supreme Court felt compelled to give us that as an issue or as an instruction that should be given. So under what circumstances should it be given? I think when it's an issue, obviously the easiest way to answer that question is to say when defense counsel requests it, then it should be given. If we were talking about whether or not the trial court even upon request says no, is it something that's supposed to be done as a matter of right or does the trial court have discretion in granting or denying the instruction? The trial court certainly has discretion. I think, let me see if I can come at this a little bit differently. To the extent that we're talking about Strickland or ineffective assistance of counsel, I don't think counsel would have made, I don't think it would not have been a reasonably strategic choice to omit this causation instruction because frankly giving 7.15a would not have helped this defendant. Ultimately, it would have made the state's felony murder case, it would have fleshed out the relevant case law about it, but it would have made the concept of foreseeability as it applies to this case even stronger for the state. The jury would have been told that it didn't matter if the victim's death was accidental or intentional. It didn't matter if it had resulted as a result of the actions of a confederate of the robbery. And so the fact that we know that the defendant in this case was originally tried as the principal of the robbery under the theories of intentional murder, that the fact that the jury was instructed on accountability, all of those facts are interesting. That's how the trial court, that's how the situation played out in the trial court. But the easiest way to read the jury, the jury's felony murder verdict is they knew this defendant was part of the robbery. And they may not have believed he was the principal or the person that personally inflicted Kuniski's wounds, but he was in that robbery, he was in that house, he was part of what went down there. And as a result, that's where felony murder liability attaches. I don't want to put words in Justice Gillum, Johnson, or Hutchinson's mouth, but I think to take your question a little bit further, under what circumstances do you think that 715A would be required to be submitted by the trial court? When you say required, do you mean required in the sense that? Well, the duty that defense counsel is suggesting. I think as far as the duty of the trial court to instruct. In other words, can you encapsulate a scenario where we would have to reverse on the basis that the trial court clearly had a duty to submit this, regardless of whether or not defense counsel sought submission. Let me localize it to this case and say, if it had been a theme, a serious theme in this trial, that there was some other cause of this victim's death, maybe those are circumstances that would rise to the level of a duty to instruct on 715A. I mean, to me, the duty comes from not only the notion of jealousy, guarding the fairness of the proceedings below and accurately communicating the law, but I don't think that the rest of the instructions without 715A. What did the death certificate say on the cause of death? It said blood force trauma due to injuries sustained in the robbery. I wonder if it said testicular cancer. That might have been something that might have triggered a 715A. When you say triggered, though, the problem is required the trial court to submit this instruction. I think that would have required the trial court to submit the instruction. Maybe, sure. I think we also may have been required to try the case just a little bit differently. But the fact is that this case was tried the way it was. I mean, that 7.15A was not given is not the trial court's fault. That's defense counsel's fault for not asking for it. Is probable cause an element or not an element? Is probable cause an element or not an element? Probable cause? Well, 7.15, I'm sorry, proximate cause. Okay. 7.15A, is that an element or not an element, proximate cause? Proximate cause is certainly an element of the offense. Cause, in fact, I mean, to the extent that we're ever talking about felony murder cases, really, cause, in fact, is not much in dispute. Its foreseeability and legal cause, I think, are part and parcel of the same subject. So if it's an element, and the trial court certainly has the obligation to sua sponte instruct on elements, correct? That's where I would disagree with you. I mean, neither versus the United States teaches us that the trial court can omit. If the trial court doesn't have the duty to supply instruction on every element of the offense, particularly in circumstances where the defendant's interest might be served by not having the jury instructed on that particular element. I mean, it gets back to my point. So now I know that we're in Strickland territory, but I don't think it would have been an unreasonable strategic decision for trial counsel to look at 7.15A, realize that it, if anything, communicated the notion of the defendant's liability in this case more severely and more stark terms than 7.15. would have, and decline to ask for the instruction. I mean, that, to me, seems like a sound strategic choice. Separate and apart from the prejudice analysis, which tells us that this defendant was part of this robbery, and no matter whether he was the principal or merely one who was accountable, his presence at the scene, his involvement in the robbery itself is really the core of his felony murder liability for the victim's death in this case. If there are no other questions, I would just close by saying this. Since 1935, in this state, when we adopted the proximate cause theory, there have been no cases, no felony murder cases that have been reversed on the basis of foreseeability grounds. The only cases that I can find are in states that adopt the agency theory of liability under felony murder, and that's a vastly different creature than the law in Illinois. Since 1935, though, you can find this in defendant's briefs, you can find it in Hudson, you can find it in Payne, you can find it in Deccan's, you can find it in almost pretty much every single felony murder case that's come up in the Illinois Supreme Court. It's been universally stated that it reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be injured by himself or by someone else, and those attempting to perpetrate the robbery would be guilty of murder. Whether or not the defendant intended to kill the victim isn't the issue. The issue, whether we look at it under a prejudice analysis, under a plain error analysis, however we want to phrase it, is ultimately this. This defendant was part of this robbery, and that robbery resulted in this victim's death. There's nothing more that needs to be said with respect to his criminal responsibility. You agree that forfeiture is not an issue? No, I very strongly think that forfeiture is an issue. The fact that this discussion has largely centered on the merits leads me to believe that maybe the court doesn't feel that forfeiture is an issue. Personally, I think that having been in the crucible in the moment, I understand why certain instructions might be given. I understand why certain instructions might be given, whether that's a strategic choice, whether that was the trial court's duty. That's the error. Defendant's raised his claim of error. I think he should pin it on the appropriate source. But ultimately, the nature of- Defective instructions are reviewable, and that's what he's arguing. Defective instructions are reviewable under 451C. I agree. I don't believe that this was the type of error. I mean, he cites this court's decision in People v. Davis and sort of in the reply brief, chiding me for not arguing about the issue of elements versus issues and whether or not the trial court had a duty to instruct. I think that the contrast between Davis and this case shows why that argument fails. Davis is a case where the jury was not instructed about the presumption of innocence. Bad instruction, the omission of that instruction can even be harmless error. So with all due respect, I frankly don't see how it could be considered plain error. I don't see how this court has an avenue to bypass the forfeiture rule, essentially. I mean, the law of equity as far as trials and the giving of jury instructions is that parties are not entitled to instructions that they don't ask for unless they affect the fundamental fairness of the trial. Because causation was so overwhelmingly proved in this case, I don't believe the fact that the instruction was given ultimately led to the type of structural error that the defendant categorizes it as. So, no, in my opinion, there is no basis for this court to overlook the forfeiture. And I believe the court can dispose of this case alone on those grounds. However, even if you decide to look at the merits of it, and even if you reach the issue of foreseeability, and even if you want to look at it under either a plain error analysis or a strickland error analysis, it does not matter because of the facts and evidence. This defendant cannot show prejudice. So for those reasons, I would urge this court to affirm the defendant's conviction in the sentence. Thank you very much for your time. Thank you. Mr. Kirkham. The whole reason that there's probable cause, excuse me, proxenar cause, is because, as Justice Freeman said in Hudson and this concludes, there have to be some kinds of limits on this felony murder theory and felony murder liability. But the Hudson majority said that this did not necessarily have to be mentioned to the jury, proxenar cause. And then they said, here's what the instruction you should give in the future, which is 7.15a, which was not given. Well, they didn't give it in that opinion. They gave it after a while, and 7.15a became an instruction later. But they really don't say when it should be given in subsequent decisions, do they? I don't think the Supreme Court has addressed that since then that I'm aware of. Or even in commentary. I mean, I think that they have to give it when causation is at issue. I mean, the Supreme Court in Hudson, you know, courted LaFaiz saying here's why we have foreseeability. Even when cause in fact is established, it must be determined whether any variation between the result intended and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result. And this notion that there has to be limits, you know, we don't want those limits to be acts of God. We have to trust our juries to determine what those limits are. And the only way we can do that is by instructing them that they have to consider that and that that is an element that they must consider in order to find a defendant guilty. It's an element that the state has to prove beyond a reasonable doubt. You know, we have to trust the jury to make those calls. They, as finder of fact, are to receive instruction 7.15a and make a determination on that. And that didn't happen in this case. But they were told, however, it is not necessary that you find the acts of the defendants or act defendant or acts for one whose conduct he is legally responsible for the sole and immediate cause of death. They were told that, correct? Correct. And so why can't we trust their decision having been told that? Because I think that is a cause in fact question. They are not told foreseeability, which is a direct and foreseeable consequence. That's a whole other question. That's a whole new consideration. You know, there's some instructions that you don't give to the jury because the terms are within the common knowledge. You know, in this case, the jury asked for a definition of great bodily harm, and the court instructed use your common understanding of that. But this question of approximate cause and foreseeability, I think that requires an instruction. That's not something that the common juror carries into the jury box with them. They need to be told that to find the defendant guilty, he must find beyond a reasonable doubt this approximate cause, that it was a direct and foreseeable consequence. And we have to trust the jury to make that call. And they can't do it when we don't instruct them. The defendant was prejudiced by that. The defendant stands today convicted of first-degree murder without the finding of approximate cause in this case. And this court should not let that stand. How did defense counsel raise his or her argument, or how did he frame his or her argument regarding this issue at trial? It came out factually. It was not argued in closing argument. It was not made a centerpiece of the defendant's summation. And I think that's understandable when you look at everything that was going on here. The defendant was charged with seven counts of first-degree murder, including intentional unknowing. Their theory of the case was that he was not involved in this at all. So the defense counsel, trial counsel, had to make a strategic decision how to approach this. They made the decision not to make this a central issue in their case. However, trial counsel's strategic decision doesn't change the elements of the offense. Even where you have three different theories of first-degree murder, you still have the element of approximate cause on the felony murder charge. That doesn't go away just because defense counsel doesn't hammer on it in his closing argument. It remains the responsibility of the trial court to issue that instruction so that the jury can properly find guilty or not guilty on the question of the felony murder charge. Your Honor, if there are no further questions, for these reasons, we would ask that Mr. Walker's conviction for murder be reversed and this clause remanded for a new trial. Very well. We'll take the case under advisement. There will be a short recess. There's one more case on the call.